### PAGE *v.* HAVERHILL ACADEMY & a.

Where a contract between a school-district and an incorporated academy, made in pursuance of Gen. Laws, c 90, s. 15, provides for the transfer to the academy of the functions appertaining to the offices of superintending and prudential committees under the general school laws of the state, the duties and powers of those officers, with respect to the school maintained under the contract, cease while the contract remains in force.

A tax-payer in the contracting district cannot maintain a bill in equity to restrain the academy from violating such contract in a matter not affecting his interest.

When such agreement by its terms was to continue in force until a certain day, " and for such further time as the contracting parties might deem useful and expedient, and by renewal and extension might agree upon," the approval of the superintending committee having been duly given to the original contract according to the requirement of the statute, their approval of the extension is not necessary.

BILL IN EQUITY, for an injunction. The bill alleges in substance as follows: December 10, 1879, school-districts Nos. 1 and 17 in Haverhill, in accordance with Gen. Laws, c. 90, s. 15, entered into an agreement with Haverhill Academy, a corporation established by law, wherein it was provided that the academy should furnish instruction to the scholars of the districts in the academic, intermediate, and primary departments, furnish a suitable building for the accommodation of the scholars, and instruct them in all the branches required by law to be taught in the common district schools of the state, at least thirty weeks each year free of charge.

The districts, on their part, agreed to turn over to the academy the school-money assigned them by the town.

This agreement was to continue three years from April 1, 1880, and for such further time as the contracting parties might deem useful and expedient, and by renewal and extension might agree upon, and was approved by the superintending school committee of the town. The parties went on under this contract for three years, and then agreed to an extension of five years; but the extension was not approved by the superintending committee.

The parties have however proceeded under it as if it had been approved.

The plaintiff is the superintending committee, and he brings this bill for himself as a citizen and tax-payer in one of the districts and as having scholars and as superintending committee, and in behalf of any citizens in the districts who may hereafter become parties. He alleges that the officers of the academy deny his right to examine the schools and the teachers, prescribe the studies therein, and exer

cise the supervision over them that the law requires; that two of the teachers therein have never been examined as by law they should have been; that the prudential committee have paid over the money of the districts to the academy, and threaten to continue to pay it over to the teachers without their producing and delivering to the prudential committees the certificates required by law, and that the conduct of the officers of the academy, the prudential committees of the districts, and the teachers, is in disregard of the authority of the plaintiff as superintending committee, in violation of law, and is subversive of the best interests of the common schools; that the scholars of said districts do not receive instruction in the common-school studies prescribed by law, free of charge as provided by the contract, nor do they receive as complete instruction in said studies as they formerly enjoyed in said districts, but they have to pay said academy a high tuition for pursuing a portion of said studies.

There is no allegation that the teachers are not qualified, that they do not perform their duty, or that the plaintiff has any interest therein except as superintending committee and as a tax-payer in one of the districts.

The prayer is for an injunction restraining the carrying on of the schools in the districts under the contract, and to restrain the prudential committee from paying over the money of the districts to the academy or the teachers thereof, and to restrain the officers of the academy from paying it over to the teachers.

The contract and copies of the votes of the districts may be referred to. The defendants filed a general demurrer, which the court *pro forma* sustained, and the plaintiff excepted.

*Burleigh & Adams* and *Bingham, Mitchells & Batchellor*, for the plaintiff.

*G. W. Chapman*, for the defendants.

BLODGETT, J.    The bill states no case for equitable relief. The effect of the agreement was not to merge the academy in the contracting districts, or to put it in charge of the town school-committee, but precisely the contrary; that is to say, the powers of the academy as to the selection and employment of its teachers, their qualifications, and the government and supervision of its pupils, were in no way impaired or abridged, while those of the districts were in these respects transferred to and became vested in the academy during the continuance of the contract; and when their schools ceased to exist as such, the jurisdiction of the plaintiff over them as superintending school-committee of the town necessarily terminated, because there was nothing left upon which his authority could be exercised.

Nor does he stand any better as a citizen and tax-payer in one of the districts, on the ground that the agreement has been violated

by charging the district scholars tuition for common-school studies, because, if there has been a breach of the contract in this respect, the law affords an adequate remedy for any party injured. It is not alleged that the rights of the plaintiff as a citizen and taxpayer are infringed. School-districts being bodies corporate, with power to sue and be sued upon contracts by them made (G. L., *c.* 86, *s.* 14), their remedy is a corporate one, and must be exercised accordingly.

The original agreement was by its terms to continue until April 1, 1884, at least, " and for such further time as the contracting parties might deem useful and expedient, and by renewal and extension might agree upon." The option as to extension was therefore personal, and confined to the "contracting parties." Who, then, were the " contracting parties "? The obvious answer is, The school-districts and the academy ;—in fact, the bill so alleges and the statute so prescribes. G. L., *c.* 90, *s.* 15. The superintending committee did not undertake to do, or not to do, anything in the performance of the agreement, and he was no more a contracting party thereto than is the magistrate or clergyman who solemnizes a marriage. Indeed, his power as to educational contracts between school-districts and academies or other literary institutions is expressly limited by the statute to approval or disapproval. Hence, when he duly approved the contract in question, which contained no condition precedent to the exercise by the contracting parties of the option as to extension, his power in respect to it was exhausted ; and as his approval must be held to be applicable to the optional as well as to the fixed period named in it, or, in other words, to the contract as an entirety, we see no reason why his formal and additional approval of the extension was necessary. And in any view, how can it be held that the extension constituted a new and independent contract within the meaning of the statute? No answer occurs to us.

*Exceptions overruled.*

STANLEY, J., did not sit : the others concurred.